IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MANDATORY RECRUITERS OF PITTSBURGH-NORTH, INC., <br> Plaintiff, <br><br> v <br><br> THE TRAVELERS INDEMNITY COMPANY OF AMERICA, <br> Defendant. | 2:13-cv-201 |

## MEMORANDUM OPINION AND ORDER OF COURT

Now pending are cross-motions for summary judgment: the MOTION FOR SUMMARY JUDGMENT (ECF No. 21) filed by Defendant The Travelers Indemnity Company of America ("Travelers"); and the MOTION FOR SUMMARY JUDGMENT (ECF No. 24) filed by Plaintiff Management Recruiters of Pittsburgh-North, Inc. ("MRI"). The motions have been thoroughly briefed (ECF Nos. 22, 25, 28, 30, 33) and the parties have thoroughly developed their respective positions regarding the Concise Statements of Material Facts ("CSMF") and have submitted numerous exhibits.[1] The motions are ripe for disposition.

Factual and Procedural Background

This case involves an insurance coverage dispute. MRI is a recruiting and placement firm located in Sewickley, Pennsylvania. At all relevant times, Travelers provided commercial general liability insurance coverage to MRI. Among other risks, the Travelers policy provides coverage of up to $150,000.00 for losses caused by "employee dishonesty." Policy No. I-680-1410A53A-TIA-11 at pp. 5-6, 37. As defined in the Policy, "Employee Dishonesty" means only dishonest acts committed by an "employee."

---

[1] Although some of the CSMFs have been denied, MRI has acknowledged that no issues of material fact remain in dispute. ECF No. 28 at 3.

On November 23, 2011, MRI submitted a proof of loss to Travelers arising from the alleged "employee dishonesty" of Abigail Dowling. MRI claimed losses of: (1) $111,000 in loss payments from clients; (2) attorneys fees of $44,000; and (3) interest of $34,500, for a total claimed loss of $189,000. On November 20, 2012 – almost a year later – Travelers denied the claim. This litigation followed.[2] In the Complaint, MRI asserts claims against Travelers for breach of contract and insurer bad faith pursuant to 42 Pa.C.S.A. § 8371.

Travelers denied MRI's claim on the ground that Abigail Dowling was not an "employee" at the time of the alleged loss. The Policy defines the term "employee" as follows:

9.    "Employee(s)"

   a.    Means:

      (1) Any natural person:

         (a)    While in your service (and for 30 days after termination of service);
         (b)    Whom you compensate directly by salary, wages or commissions; and
         (c)    Whom you have the right to direct and control while performing services for you; . . .

   b.    **Does not mean** any agent, broker, person leased to you by a labor leasing firm, factor, commission merchant, consignee, ***independent contractor*** or representative of the same general character.

(Emphasis added).

On October 1, 2001, Abigail Dowling and MRI entered into an Account Executive Employment Agreement (Defendant Exh. 1). The Employment Agreement defines Dowling as the "Employee" and Dowling performed services for MRI as a professional recruiter. Dowling was paid a base salary plus commission, and was treated as a W-2 employee by MRI. Dowling

---

[2] MRI also filed a breach of contract action against Dowling which was ultimately discharged and discontinued as uncollectible because Dowling had filed for bankruptcy. *See* Defendant Exh. 12 (Stipulation for Settlement). Of note, the Stipulation for Settlement provided: "In November 2009, the Defendant left the employ of the Plaintiff ..."

Deposition at 23. It is undisputed that Dowling was, in fact, an employee of MRI until November 2009. The Employment Agreement contained a one-year, 100-mile restrictive covenant which prohibited Dowling from performing personnel placement services or having an ownership interest in such a business.

In early November 2009, an argument ensued between Dowling and Joan Lampl (the President of MRI) and Dowling requested that her employment be terminated. On November 13, 2009, MRI and Dowling entered into an Addendum to the Employment Agreement. As relevant to this case, the Addendum provided, inter alia, that: (1) "This agreement is for Abigail Dowling to be self employed or to be employed in a recruiting office"; (2) "Abigail Dowling must refrain from the use of names as designated by [MRI]"; (3) set forth a schedule of commissions to be paid by Dowling to MRI under various conditions of recruiting; (4) "MRI will have the right to audit the Abigail Dowling's business telephone records, daily planners, and computer storage"; (5) "If the Abigail Dowling fails to adhere to this agreement addendum, the original Account Executive Employment Agreement will be enforced including extensions of time"[3]; (6) "Abigail Dowling must show this agreement to any recruiting firm that is anticipating employing her"; and (7) releasing Dowling from her non-compete if she abided by the terms of the Addendum.

Section VII of the Addendum set forth the "Terms of Separation." Of particular relevance, Section VII(A) provides:

> **A. Abigail Dowling's last date of permanent employment with M/R will be End of business Friday November 13th, 2009. On Saturday November 14th Abigail Dowling will begin work as a #1099 contractor effective through December 31st 2009.**

---

[3] In its response brief, Travelers improperly focuses on § VII (H) of the Addendum, which sets forth <u>Dowling's</u> remedies if <u>MRI</u> breaches the Addendum. The provision quoted above, which outlines <u>MRI's</u> remedy for a breach by <u>Dowling</u>, is in § VI of the Addendum.

3

Pursuant to the Addendum, Dowling was required to remit the sum of $111,000.00 to MRI, as she received money from continuing her work as a recruiter. Dowling made no payments to MRI. On January 2, 2010 a recruiting company named Currents International announced that Dowling would join that firm as Director of its Utility Practice. Dowling knew the owner and had given him advice on how to form a recruiting business. Dowling testified that she commenced her employment as a recruiter with Currents International in May 2010. On January 18, 2010 Dowling sent a letter to MRI which claimed that she was not circumventing payments to MRI. In June 2010, Joan Lampl and the CFO of Currents International (another former employee of MRI) exchanged emails regarding a 365-day guarantee period for a particular client identified in Dowling's report of her activities in May 2010. When Dowling made placements, she invoiced the payments through Currents International.

Dowling was required to provide reports to MRI regarding her placement activities. On one occasion in 2010, MRI instructed Dowling to take no further action in regard to placements with Henkels & McCoy, an ongoing client of MRI. Joan Lampl Deposition at 64-66. On February 24, 2010, MRI made a payment to Dowling of $7,312.50 arising from a placement Dowling had made in 2009, while she was still an MRI employee. Dowling Deposition at 115-16.

Standard of Review

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant must identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).  A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To withstand summary judgment, the non-movant must show a genuine dispute of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  "The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v*, 477 U.S. at 247-48.  Rather, a dispute is "genuine" only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. 249.

Legal Analysis

Travelers contends that it properly denied MRI's claim for coverage for several reasons.  First, Travelers asserts that because Dowling was not an employee at the time of the alleged loss, the "employee dishonesty" coverage did not apply.  In addition, Travelers contends that: (1) MRI's insurance claim is contrary to its averment in the Dowling lawsuit that her employment had been terminated in November 2009; (2) Dowling did not act "dishonestly" but merely breached her contract due to a lack of money to meet essential family expenses; and (3) that MRI did not file this lawsuit within the two-year contractual limitations period.  In addition, Travelers contends that it is entitled to summary judgment on the insurance bad faith claim because it had a reasonable basis to deny MRI's claim.

The Court need not address all of the contentions raised by Travelers because it agrees that Dowling was not an "employee" at the time of the loss. Therefore, Travelers properly denied MRI's insurance claim and it is entitled to summary judgment in this case.

There is a distinct difference in status and tax treatment between an "employee" and an "independent contractor." Whereas a W–2 form is issued for an employee's wages and numerous tax withholding obligations are imposed on the employer, a Form 1099–MISC reflects that the payer treats the recipient "as a self-employed worker, also referred to as an independent contractor," and "has determined that an employer-employee relationship does not exist." *Lewis v. ASAP Land Express, Inc*., 554 F. Supp.2d 1217, 1221 n.3 (D. Kan. 2008) (*citing* Frequently Asked Tax Questions And Answers, http://www.irs.gov/faqs/faq-kw5.html (last visited Mar. 18, 2008)). Consistent with this distinction in status, the Travelers insurance policy explicitly stated that the term "employee" did not include an independent contractor.

On November 13, 2009, MRI and Dowling entered into an Addendum which knowingly and purposefully changed Dowling's status. It is abundantly clear, under the facts and circumstances of this case, that effective November 14, 2009, Dowling was no longer an employee, but was instead a Form 1099 independent contractor. MRI's alleged loss was that Dowling failed to repay $111,000 that she owed under the terms of the Addendum. Because Dowling was necessarily an independent contractor at the time of the alleged loss, the Travelers "employee dishonesty" insurance coverage did not apply to her actions.

MRI makes several attempts to overcome the clear, plain language of the Policy and Addendum, none of which are convincing. MRI contends that Dowling should be construed as an employee because: (1) she acted "in [MRI's] service" in that some of her placements involved MRI clients or candidates; (2) MRI made a payment to Dowling in February 2010; (3) MRI

advised her to take no further action in regard to placements with Henkels & McCoy; and (4) MRI received reports of Dowling's activities. It is clear that the February 2010 payment arose from Dowling's pre-Addendum actions in 2009, when she was still an MRI employee. The evidence of alleged control submitted by MRI falls far short of that required to overcome Dowling's explicit status as an independent contractor. *See Tobey-Karg Sales Agency, Inc. v. Pennsylvania Dept. of Labor and Industry*, 34 A.3d 899 (Pa. Commw. 2011) (applying Pennsylvania law to hold that sales representatives were properly classified as independent contractors). MRI also points to the provision in the Addendum which reflects: "If the Abigail Dowling fails to adhere to this agreement addendum, the original Account Executive Employment Agreement will be enforced including extensions of time." Regardless of the enforcement remedies provided by this provision, any failure by Dowling to adhere to the terms of the Addendum necessarily occurred <u>after</u> her status was changed from employee to independent contractor. In other words, even if MRI was able to enforce some provisions of Dowling's original Account Executive Employment Agreement, upon the signing of the Addendum Dowling was no longer an "employee." In sum, Travelers properly denied MRI's "employee dishonesty" claim.

Conclusion

In accordance with the foregoing, the MOTION FOR SUMMARY JUDGMENT (ECF No. 21) filed by Defendant The Travelers Indemnity Company of America will be **GRANTED**; and the MOTION FOR SUMMARY JUDGMENT (ECF No. 24) filed by Plaintiff Management Recruiters of Pittsburgh-North, Inc. will be **DENIED**. The case will be docketed closed.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MANAGEMENT RECRUITERS OF ) 
PITTSBURGH-NORTH, INC., )
           Plaintiff, )
) 2:13-cv-201
v )
)
THE TRAVELERS INDEMNITY COMPANY )
OF AMERICA, )
           Defendant. )

## ORDER OF COURT

AND NOW, this 17th day of January, 2014, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that the MOTION FOR SUMMARY JUDGMENT (ECF No. 21) filed by Defendant The Travelers Indemnity Company of America is **GRANTED**; and the MOTION FOR SUMMARY JUDGMENT (ECF No. 24) filed by Plaintiff Management Recruiters of Pittsburgh-North, Inc. is **DENIED**. The clerk shall docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:    **David L. Fuchs, Esquire**
      Email: dfuchs@lampllaw.com
      **James R. Cooney, Esquire**
      Email: jcooney@lampllaw.com
      **Robert O. Lampl, Esquire**
      Email: rol@lampllaw.com

      **Paul K. Geer, Esquire**
      Email: pgeer@dgmblaw.com